[File No. 6996.]

FLOYD J. LINNELL, Trustee for Interstate Cooperative Oil Association, a Cooperative Association, Respondent, v. LONDON & LANCASHIRE INDEMNITY COMPANY, a Foreign Corporation, Appellant.

(22 NW2d 203)

Opinion filed March 16, 1946.

*Thorp, Wattam & Vogel* and *John Morrison,* for appellant.

*Quentin N. Burdick,* for respondent.

MORRIS, J. This is an appeal by the defendant from a judgment entered pursuant to a verdict of the jury and from an

order denying defendant's motion for judgment notwithstanding the verdict or for a new trial. The action is based upon a fidelity bond in the sum of $1000.00 wherein the defendant indemnified the Interstate Cooperative Oil Association against "all pecuniary loss of money, securities, or other personal property belonging to the Employer (or in his possession and for which he is legally liable), sustained by said Employer by reason of any fraudulent or dishonest act or acts, amounting to Larceny or Embezzlement, committed by" the Manager of the Interstate Cooperative Oil Association.

Under the statutes of North Dakota embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted. Section 12–3601, Rev Code ND 1943. Larceny is the taking of personal property accomplished by fraud or stealth and with intent to deprive another thereof. Section 12–4001, Rev Code ND 1943.

The defendant challenges the sufficiency of the evidence to establish liability under the bond. It is admitted that the Manager was covered by the bond and that he was an employee of the Association from July 1, 1939, to June 2, 1941. The bond became effective January 1, 1940, and continued in force throughout the remainder of the Manager's period of employment.

Plaintiff's right to recover rests chiefly upon the testimony of the Witness Selvig, a public accountant, and his audit of the books of the Association which was introduced in evidence. The defendant challenges the admissibility of Selvig's testimony and audit upon the grounds of irrelevancy, incompetency, hearsay, and violation of the best evidence rule. Selvig's audit is divided into two parts, an audit report covering the business of the Association from January 1, 1941, to May 31, 1941, inclusive, and a detailed check and report of the cash receipts and cash accounted for from July 1, 1939, to June 2, 1941, with exhibits, schedules and detail sheets showing cash receipts and cash paid out or deposited. He explained that the method of bookkeeping used by the Association, ". . . was to charge all of the receipts of cash to cash, which we call to the debit of cash. And

then as cash was paid out or deposited, cash was credited. So that from that result, by adding the total amount of cash received and then adding the total amount of cash paid out or deposited in the bank, and deducting it from the amount of receipts we ascertained the amount of cash on hand at the end of any given period. Then that is verified to the amount of cash that is actually on hand to ascertain whether all of the cash has been properly accounted for and is on hand. We use all the records available of the association. In this particular case every record of original entry was checked and then traced on to the various books and finally into the general ledger and a detailed report made of each of these itemized statements."

The largest item entering into the shortage and concerning which considerable controversy exists is a loan for $1000 made from a bank and for which the Manager gave the Association's note. The audit shows that the loan was made on September 10, 1940, and was entered in the books of the Association as a bank debit of $1000 and a cash credit for a like amount. No entry debiting the cash account with the receipt of this sum was made. Selvig's testimony shows that when the one entry crediting cash with the amount of this loan was made without a corresponding debit entry showing that it was received into the cash account, the result was to cover up a shortage of $1000 in the cash account. Numerous other smaller items are set forth in detail in the audit and the testimony of the auditor which accounts for the remainder of the cash shortage. These consist chiefly of the failure to debit the cash account with cash actually received and with crediting the cash account twice with the same deposits. Without going into further detail, we are satisfied, as was the trial court, that the evidence amply sustained the determination of the jury that the books kept by the Manager or under his immediate supervision establish as a fact a shortage in excess of the indemnity provided by the bond.

We now pass to a consideration of the defendant's challenge to the admissibility of the audit and the testimony pertaining thereto. The Witness Selvig stated on cross-examination that the correctness of the shortage as determined by his examina-

tion depended upon the counting of the cash on hand at the beginning of the audit on July 1, 1939, and at the close of the period covered thereby on June 2, 1941. The witness was not present on either occasion. For the amount of cash on hand July 1, 1939, he accepted the statement contained in a former audit made by another auditor, Mr. Tandberg, who was not a witness at the trial. The amount shown as cash on hand was only $2.73. If we assume that it was erroneous and the Association had no cash on hand on July 1, 1939, the judgment would not be affected since the shortage established far exceeded the indemnity provided by the bond. With respect to the cash on hand on June 2, 1941, it appears that two directors of the Association made an inventory of the personal property and cash. One of them testified that the Association then had as cash on hand $7.05 in money and a check payable to the Manager for $26.25, making a total of $33.30. This is the sum that the Witness Selvig used in making his audit. It is established as being correct by the undisputed testimony of the witness who made the actual count. It presents no foundation for the challenge to the admissibility of the testimony and audit of the Witness Selvig.

There can be no question but that books of account kept by a person or kept under his immediate supervision are admissible in evidence in a civil action involving his disposition of moneys coming into his hands and shown by the items set forth in the books. Some courts have permitted the introduction in evidence of such books in some cases of embezzlement. State v. Cooke, 130 Or 552, 278 P 936; State v. German, 163 Or 342, 96 P2d 1085; State v. Lake, 99 Mont 128, 43 P2d 627.

In a suit to recover upon an agent's or employee's bond, books of account kept by the agent or employee by his direction pursuant to his duties with respect to the business covered by the bond, are, after proper identification, competent evidence against the sureties of the accounts covered thereby. Baird v. National Surety Co. 54 ND 91, 209 NW 204; Wishek v. United States Fidelity & G. Co. 55 ND 321, 213 NW 488; Kuhl v.

Chamberlain, 140 Iowa 546, 118 NW 776, 21 LRA(NS) 766; Wigmore, Evidence, 3d ed § 1077; Spencer, Suretyship, § 257. The appellant objects strenuously to the introduction of the testimony of Selvig and his audit upon the ground that no foundation has been laid therefor and that the evidence thus presented is hearsay. The books and accounts are the best evidence of what is contained therein. Dr. R. D. Eaton Chemical Co. v. Doherty, 31 ND 175, 153 NW 966. The audit and the testimony based thereon are inadmissible unless within some exception to the rule requiring that the best evidence be produced.

While ordinarily the testimony of an accountant may not be admitted in evidence to show the contents of books of account there are two exceptions to the rule. The first exception is thus stated in the fourth paragraph of the syllabus by this Court in Baird v. National Surety Co. 54 ND 91, 209 NW 204; supra: "The court may, in its discretion, permit a competent witness, who has examined the books with reference to the points sought to be established, to testify to the result of his examination or to present schedules verified by his testimony showing the details of the computation he has made where the facts sought to be proved are of such character and the books are so voluminous that the examination of each item would be very laborious." This rule presupposes that the books have either been introduced in evidence or are available to the court and to opposing counsel. It is a rule of convenience based upon the practical necessity of permitting experts to summarize and point out to the court and jury salient facts that would be otherwise obscured by myriad figures. The following are among the many authorities that support the rule: Burton v. Driggs, 20 Wall. (US) 125, 22 L ed 299; Hartford Acci. & Indem. Co. v. Shaw (Tex Civ App), 8 SW2d 196; State ex rel. Sullivan County v. Maryland Casualty Co. 334 Mo 259, 66 SW2d 537; Alabama Fidelity & C. Co. v. Alabama Penny Sav. Bank, 200 Ala 337, 76 So 103; Hubble v. Hubble, 130 Or 177, 279 P 550; Shreve v. United States (CCA 9th) 77 F2d 2.

The second exception in behalf of the admission of the testimony of an accountant arises where the books which he has examined are not available because they are beyond the jurisdiction of the court or have been lost or destroyed without fault of the proponent. In Burton v. Driggs, 20 Wall.(US) 125, 22 L ed 299, supra, the cashiers of a bank whose books were beyond the jurisdiction of court and were not made available on demand were permitted to testify that the books of the bank did not show any transactions with the defendant. In holding the evidence admissible the court said: "The books being out of the State and beyond the jurisdiction of the court, secondary evidence to prove their contents was admissible." Both of the exceptions above discussed are covered in Jones, Commentaries on Evidence, 2d ed, § 767, by the following quotation from Ehmling v. D. L. Ward Co. 279 Pa 527, 124 A 181: "Where the results of voluminous facts contained in writings, or of the examination of many books and papers or records, are to be proved, and the necessary examination of this documentary evidence cannot be conveniently or satisfactorily made in court, it may be made by an expert accountant or other competent person and the results thereof may be proved by him, if the books, papers, or records themselves are properly in evidence, or their absence satisfactorily explained, the admission of such testimony being a matter resting largely in the discretion of the trial court." Statements of similar import are found in 32 CJS Evidence, § 789, and in a note in 52 ALR p 1268. This court applied the foregoing rule in Wishek v. United States Fidelity & G. Co. 55 ND 321, 213 NW 488, supra, wherein we said:

"The rule is that in those cases where it is impracticable or impossible for the court to make an examination of a large number of instruments, entries or records, a competent witness may make such examination and present his conclusions thereon to the court."

In making his audit Mr. Selvig examined all of the original entries involved in the books and accounts of the Manager. He estimated the number of such entries at between 4000 and 5000. At the time of the trial most of the original entries had become

lost. They had been left in a safe which had been sold to a dealer in office equipment. The dealer had taken the safe to his warehouse across the state line in Moorhead, Minnesota. When the dealer sold the safe he removed the papers that it contained and stored them in a box in his warehouse. The contents of the warehouse were moved to a new location. He testified as a witness for the plaintiff and in explanation of the loss of the contents of the safe stated that he had searched both the old and new warehouses and has been unable to find them. Thus it appears that the plaintiff was unable to produce many of the items of original entry upon which the testimony and audit of Selvig is based. The trial court admitted this evidence upon the theory that the absence of the original entries had been satisfactorily explained and that the audit and the testimony of the auditor were thus rendered competent as secondary evidence. The books were not available and their absence was satisfactorily explained. Thus evidence of their contents became admissible as the best available evidence. The testimony of Selvig and the detailed schedules of his audit show what the books contained with reference to the cash account. When this was shown the auditor's summary also became admissible under the rule which this court has recognized in Baird v. National Surety Co. 54 ND 91, 209 NW 204, supra, and Wishek v. United States Fidelity & G. Co. 54 ND 91, 209 NW 204, supra.

The appellant also urges that the evidence fails to show that the shortage occurred during the period covered by the bond which was from January 1, 1940, to June 2, 1941. All the items constituting the alleged shortage deal with receipts or payments of money between those dates. It also appears that the cash on hand December 31 was $543.06 which was the amount that appears in the Selvig audit as of that date. The fact that this cash was actually on hand is shown by the testimony of the Witness Hammerud who made an audit of the books of the Association covering the period from December 30, 1939, to December 31, 1940, inclusive. He counted the cash when he made his audit and thus verifies the amount as shown in Selvig's audit.

Hammerud's audit report was also introduced in evidence as an exhibit over the objection of appellant's counsel. It was admitted upon the same theory as was the Selvig audit. Similar foundations were laid for the admission of the two audits. While much of the contents of the Hammerud audit is irrelevant and the chief purpose of its admission seems to be to show the amount of cash on hand on December 31, 1939, we find no prejudicial error in its admission.

A third audit made by a Mr. Tandberg covering the affairs of the Association from January 1, 1939, to June 30, 1939, was also admitted in evidence over objection of the appellant. Mr. Tandberg did not testify. The purpose of introducing this audit was to show that the cash on hand on June 30, 1939 was $2.73. This is the point where Mr. Selvig's audit of the cash account begins. The Tandberg audit was clearly inadmissible. No foundation was laid for its introduction. Nevertheless, we are unable to see that the appellant was prejudiced in any way by its admission. The only thing that it shows that has the slightest relevancy to the issues in this case is the amount of cash on hand June 30, 1939. As we have pointed out, this amount is so small that had there been no cash on hand the sufficiency of the evidence of appellant's liability would still be ample as the over-all cash shortage occurring during the period covered by the bond was shown to be $2018.54.

The appellant makes the further contention that though the evidence may show a book shortage of some $2000 this does not constitute sufficient evidence to establish liability under the bond. It is argued that the bond indemnifies against fraudulent or dishonest acts amounting to larceny or embezzlement and that the evidence fails to establish that the shortage was occasioned by such acts. The plaintiff is not required to establish the acts upon which he bases his recovery by the same quantum of evidence as that prescribed by criminal law. This is a civil action and preponderance of competent and credible evidence will suffice. Mitchell Grain & Supply Co. v. Maryland Casualty Co. 108 Kan 379, 195 P 978, 16 ALR 1488; Green v. United States Fidelity & G. Co. 135 Tenn 117, 185 SW 726.

The evidence in this case shows that the bonded manager was in charge of the business of the corporation and that the books and accounts were kept by him or under his immediate supervision. The cash account as shown by the books, together with the testimony of witnesses who counted the cash on hand at the beginning and at the end of the period covered by the bond, demonstrates that the cash received exceeded the cash accounted for by over $2000. The defense introduced no testimony and relies upon a failure of proof on the part of the plaintiff. That proof is sufficient to make out a prima facie case and to warrant the jury in rendering the verdict upon which the judgment is based. Mitchell Grain & Supply Co. v. Maryland Casualty Co. (Kan) supra; United States Fidelity & G. Co. v. Country Club, 129 Va 306, 105 SE 686; Webster City Sav. Bank v. Massachusetts Bonding & Ins. Co. 203 Iowa 1264, 212 NW 545; Stilley v. Dawsey, 153 SC 276, 150 SE 763. The judgment and order appealed from are affirmed.

CHRISTIANSON, Ch. J., and BURR, NUESSLE and BURKE, JJ., concur.